## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| ANNE REAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:15cv00601–HEH |
| | ) | |
| DEUTSCHE BANK NATIONAL | ) | |
| TRUST COMPANY AMERICAS, | ) | |
| AS TRUSTEE FOR RALI 2007QS9, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION
**(Defendant's Motion to Dismiss)**

Anne Reamer ("Plaintiff"), brings this action against Deutsche Bank Trust Company Americas, as Trustee for RALI 2007QS9 ("Deutsche Bank"), seeking $125,000 in compensatory damages for alleged breaches of contract that occurred in the process of foreclosure on Plaintiff's home. Plaintiff's Complaint was originally filed in the Circuit Court for the City of Richmond, Virginia and was removed to this Court on October 8, 2015. The matter is presently before the Court on Deutsche Bank's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 3). The underlying issues have been thoroughly briefed by the parties, and the matter is now ripe for decision. For the reasons discussed below, Deutsche Bank's Motion to Dismiss will be granted in part and denied in part.

## I. BACKGROUND

On May 17, 2007, Plaintiff entered into the mortgage loan underlying this matter with First Savings Mortgage Company. (Compl. ¶ 5, ECF No. 1-1.) The loan was evidenced by a promissory note ("Note"), which was secured by a deed of trust ("Deed of Trust"). (*Id.*) The Deed of Trust appointed Larry F. Pratt as the original trustee. (*Id.*) Mortgage Electronic Registration System ("MERS") was identified as the "nominee" of the Lender and the "beneficiary" under the Deed of Trust. (*Id.* at ¶¶ 24-25.) At some point prior to the events in controversy, Deutsche Bank purchased ownership rights to the Note from First Savings Mortgage Company, thereby assuming the role and the rights of the "Lender" as to both the Note and the Deed of Trust. (*Id.* at ¶ 28.) Wells Fargo Bank, N.A., held physical possession of the Note, acting as custodian. (*Id.* at ¶ 19.) Deutsche Bank subsequently engaged GMAC Mortgage, LLC ("GMAC") as servicer for Plaintiff's mortgage loan. (*Id.* at ¶ 57.)

On April 12, 2010, MERS, acting as nominee of the Deutsche Bank, removed Pratt as trustee and replaced him with Executive Trustee Services, Inc. ("ETS"). (*Id.* at ¶ 18). On April 20, 2010, Plaintiff received notice from GMAC informing her that foreclosure proceedings had begun on her account but not stating any amount of default or setting forth a deadline to cure such a default and avoid foreclosure. (Pl.'s Mem. in Opp. 3, n.1, ECF No. 9). On June 8, 2010, ETS conducted a foreclosure auction of Plaintiff's home, acting as substitute trustee and agent of Deutsche Bank. (Compl. ¶ 34.)

At the time of the foreclosure, Deutsche Bank was a participant in the federal Home Affordable Modification Program ("HAMP"), which incentivizes loan servicers to

2

permit adjustments for struggling homeowners to their existing mortgage obligations. (*Id.* at ¶¶ 53, 55.) As a HAMP participant, Deutsche Bank executed a Servicer Participation Agreement ("SPA") with the federal government. (*Id.* at ¶ 52.) The SPA incorporated, among other things, all guidelines and supplemental letters and directives issued by the U.S. Department of the Treasury. (*Id.* at ¶ 54.) In 2009, the Treasury promulgated HAMP Supplemental Directive No. 09-01, prohibiting foreclosure during the pendency of a HAMP loan modification application. (*Id.* at ¶ 56.)

In 2010, Plaintiff filed an application with GMAC, Deutsche Bank's servicer, for a HAMP loan modification. (*Id.* at ¶ 59.) Plaintiff sent everything she was required and requested to send to be considered for a loan modification. (*Id.* at ¶ 60.) Plaintiff did not hear from Deutsche Bank or GMAC regarding the status of her loan modification application until June 11, 2010, three days after the foreclosure of her home. (*Id.* at ¶ 63.) The June 11 notice indicated that Plaintiff's application was denied on the grounds that foreclosure had already occurred. (*Id.* at ¶ 63.) Deutsche Bank, through its servicer and agent GMAC, subsequently reported the foreclosure to credit reporting bureaus. (*Id.* at ¶ 40.) This suit followed.

In Counts One and Two of the Complaint, Plaintiff alleges that Deutsche Bank breached the applicable law provision of the Deed of Trust. (*Id.* at ¶¶ 41, 65.) Count One contends that Deutsche Bank breached by foreclosing on Plaintiff's home through a substitute trustee appointed contrary to applicable law. (*Id.* at ¶ 39.) Count Two alleges that Deutsche Bank, acting through GMAC, breached the applicable law provision by foreclosing on Plaintiff's home while Plaintiff's HAMP loan modification application

3

was pending, contrary to HAMP Supplemental Directive No. 09-01. (*Id.* at ¶¶ 64-65.)
Count Three of Plaintiff's Complaint alleges that Deutsche Bank breached the cure notice
provisions found in both the Note and the Deed of Trust by foreclosing on Plaintiff's
home without sending a proper cure notice. (*Id.* at ¶ 72.) Plaintiff alleges that she
suffered actual damages as a result of Deutsche Bank's conduct, including loss of equity
and damage to credit. (*Id.* at ¶¶ 44, 66, 73).

## II. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;
importantly, it does not resolve contests surrounding the facts, the merits of a claim, or
the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952
(4th Cir. 1992) (citation omitted). To survive a Rule 12(b)(6) challenge, a complaint
must contain sufficient factual information to "state a claim to relief that is plausible on
its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R.
Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and
plain statement of the claim showing that the pleader is entitled to relief."). Mere labels
and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*,
550 U.S. at 555. Thus, the "[f]actual allegations must be enough to raise a right to relief
above the speculative level," to one that is "plausible on its face" rather than merely
"conceivable." *Id.* at 555, 570 (citations omitted). In considering such a motion, a
plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the
light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted).
Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court may, however, consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); see also *Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). In addition, the court may consider documents attached to the defendant's motion to dismiss if those documents are central to the plaintiff's claim or "sufficiently referred to in the complaint," so long as the plaintiff does not challenge their authenticity. *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396–97 (4th Cir. 2006) (*per curiam*); see *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

## III. DISCUSSION

As a general matter, Deutsche Bank argues that Plaintiff's claims are barred because she failed to provide notice prior to filing her complaint, as required by Paragraph 20 of the Deed of Trust. (Def.'s Mem. Support at 1–2, ECF No. 4.) However, this argument constitutes an affirmative defense to Plaintiff's claims of breach, and a court may only rule on an affirmative defense at the 12(b)(6) stage "if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Deutsche Bank is correct to point out that it is clearly apparent that the Deed of Trust contains a notice requirement. (Def.'s Reply at 3, ECF No. 11.) However, the Complaint does allege that Plaintiff in fact sent the required "grievance notice". (Compl. ¶ 8.) In light of the parties' conflicting

5

assertions, the facts necessary to Deutsche Bank's affirmative defense are not clearly apparent on the face of the Complaint, and therefore the Court cannot address the affirmative defense at this time. The argument is instead "more properly reserved for consideration on a motion for summary judgment." *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).

## A. Counts One & Two—Breach of Applicable Law

Paragraph 16 of the Deed of Trust provides that "All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." (Compl., Ex. B at 11.) Applicable Law is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." (Compl., Ex. B at 3.)

### 1. Count One Does Not State a Viable Claim that ETS's Appointment as Substitute Trustee was Improper

Plaintiff argues that ETS's appointment was invalid under applicable law, primarily because, contrary to the policies and procedures stated on its website, MERS lacked possession of the Note at the time it instituted foreclosure proceedings. Plaintiff contends that, as a result of this, the foreclosure sale conducted by ETS and subsequent reporting of the foreclosure to credit bureaus constituted a breach of the Deed of Trust. This claim fails for two reasons. First, Plaintiff lacks standing to challenge ETS's appointment. Second, even if Plaintiff had standing, she has not pled facts sufficient to plausibly show the appointment was not valid.

6

A debtor who is not a party to or intended beneficiary of the appointment of a substitute trustee has no legal rights or interest in that appointment and therefore lacks standing to challenge its validity. *Wolf v. Fannie Mae*, 512 Fed. Appx. 336, 342 (4th Cir. 2013); *Morrison v. Wells Fargo Bank, N.A.*, 30 F. Supp. 3d 449, 454 (E.D. Va. 2014). MERS, acting as nominee for Deutsche Bank, appointed ETS as substitute trustee, and Virginia Fetta, Assistant Secretary of MERS, executed the document; Plaintiff had no direct involvement or interest in the appointment. (Compl., Ex. D.) Based on these principles, Plaintiff's claim is foreclosed.[1]

Moreover, even if Plaintiff did have standing, she has not pled facts sufficient to undermine the validity of ETS's appointment. Pursuant to the terms of the Deed of Trust, MERS has the authority to "exercise any or all" of the legal interests granted to the Lender in the Deed of Trust, and to "take any action required of the Lender," including appointing a substitute trustee. (Compl., Ex. B at 4.) Plaintiff agreed to these terms by executing the Deed of Trust. *See Ramirez-Alvarez v. Aurora Loan Services, LLC*, 2010 WL 2934473 *3 (E.D. Va. July 21, 2010) ("In executing the Deed of Trust, Mr. Ramirez-Alvarez agreed that MERS, filling the dual roles of beneficiary and nominee for the lender, had the right to foreclose on the property and take any action required of the lender, such as the appointment of substitute trustees."). MERS exercised this authority when it appointed ETS as substitute trustee. (Compl., Ex. D.) Furthermore, MERS appointed ETS as substitute trustee in a manner consistent with Virginia law, which

---

[1] Plaintiff cites to a handful of state court cases in support of her standing argument. These cases are largely distinguishable, however, and also do not stand against the weight of Virginia state and federal cases holding against debtor standing. Plaintiff's arguments relying on "the special considerations that apply to a home" are also unpersuasive in this context.

permits a substitute trustee to be appointed under a separate notarized document that removes the original trustee named in the Deed of Trust. *See generally Wachovia Bank, N.A. v. Van Huyck*, 64 Va. Cir. 306 (2004); *see also* Va. Code Ann. § 55-59(9) ("The party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee or trustees . . . by executing and acknowledging an instrument designating and appointing a substitute.").

Plaintiff's argument that MERS was precluded from appointing a substitute trustee because neither it nor Deutsche Bank was in physical possession of the Note at the time it did so is equally unavailing. To begin with, Plaintiff provides no authority to support the claim that MERS is bound by the information listed on its website, which presents that "[w]hen MERS forecloses, MERS . . . will be in possession of the original note endorsed in blank . . . . MERS will not foreclose unless the note is endorsed in blank and held by MERS." (Compl. at ¶ 16.) This online statement certainly does not fall under the Deed of Trust's definition of "Applicable Law," and so any action to the contrary does not by itself constitute a breach the Deed of Trust.

Secondly, the fact that Wells Fargo was acting as custodian of the Note and therefore in physical possession of it at the time of ETS's appointment does not change MERS's rights and authority (as Deutsche Bank's nominee) under the terms of the Note and the Deed of Trust. Although possession of a negotiable instrument, endorsed in blank—such as the Note at issue here—typically permits the holder to enforce the

instrument,[2] the plain language of the Note states that "[t]he Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (Compl., Ex. A at 1.) Deutsche Bank took the Note by transfer, became entitled to receive payments under the instrument, and therefore became the Note Holder when it purchased ownership rights in the Note from First Savings Mortgage Company. Plaintiff recognizes the validity of this transaction, and that Deutsche Bank thereafter became the party "liable to the contractual provisions of the Deed of Trust as Lender." (Compl., ¶ 28.)

To recognize that Deutsche Bank is the Lender and Note Holder while claiming that another party (Wells Fargo) "possesses" the Note for purposes of enforcing the instrument and instituting foreclosure proceedings is incorrect. *See Hien Pham v. Bank of New York*, 856 F.Supp.2d 804, 813 n.14 (E.D. Va. 2012) ("If it is true that BNY does not possess the Note, then it must also be true that another entity either possesses the Note or is entitled to rights as lender under the Note. . . . Given this, plaintiffs' assertion that BNY does not possess the Note depends on the incredible allegation that some unidentified entity acquired the Note . . . and yet has sat idly by as plaintiffs have ceased making payments and BNY has begun asserting rights reserved for the noteholder.).[3]

_____

[2] *See Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 621 (4th Cir. 2011) (considering the purchase and transfer of a similar note endorsed in blank and Virginia's rules governing negotiable instruments).

[3] Plaintiff does not plead facts indicating on whose behalf Wells Fargo acted as custodian, but Deutsche Bank asserts that Wells Fargo was custodian for MERS. (Def.'s Mem. in Supp. 11, n. 3). Although such information is not subject to the Court's consideration at the 12(b)(6) stage, if true, it supports the dismissal of Count One, because a custodian bank is simply an agent of the principal holder in due course, and possession by an agent in the scope of the agent's authority is sufficient to establish possession by the principal. *See* U.C.C. 9-313, cmt. 3 ("[I]f the collateral is

Plaintiff is essentially asking the Court to recognize a "show me the note" argument, that a party seeking to enforce a note must first prove their possession of the instrument. Such arguments have "been widely rejected as 'contrary to Virginia's non-judicial foreclosure laws.'" *Fedewa v. J.P. Morgan Chase Bank, Nat. Ass'n*, 921 F. Supp. 2d 504, 508 (E.D. Va. 2013) (quoting *Gallant v. Deutsche Bank Nat'l Trust Co.*, 766 F.Supp.2d 714, 721 (W.D.Va.2011); *accord Minix v. Wells Fargo Bank*, 81 Va. Cir. 130, 2010 WL 7765589, at *4 (Fairfax Cty. Aug. 24, 2010) (cautioning that courts should not "be creating a judicial foreclosure procedure when the legislature has mandated a non-judicial procedure to be appropriate") (citation omitted).

This Court agrees with other Virginia federal courts that have faced similar "show me the note" arguments in recent years, and will not invent such a requirement where the legislature has declined to do so. *See Fedewa*, 921 F. Supp. 2d at 509 ("'Sections 55–59.1 through 55–59.4 [of the Virginia Code], which set forth the procedural requirements for a nonjudicial foreclosure, do not require an interested party to prove 'standing' in a court of law before initiating the foreclosure process.'") (quoting *Tapia v. United States Bank, N.A.*, 718 F.Supp.2d 689, 698 (E.D.Va. 2010)); *O'Dell v. Deutsche Bank Nat'l Trust Co.*, 2013 WL 2389874 at *14, n.29 (E.D. Va. May 30, 2013); *Pham*, 856 F.Supp.2d at 810 ("[B]ecause Virginia law unequivocally disallows a 'show me the note' claim against a noteholder, it also disallows similar 'show me the noteholder's authority' claims against

---

in possession of an agent of the secured party for the purposes of possessing on behalf of the secured party . . . the secured party has taken actual possession.").

MERS and Wittstadt here."); *Zambrano v. HSBC Bank, USA, Inc.*, 2010 WL 2105164 at *6 (E.D. Va. May 25, 2010).

In light of the above, Plaintiff fails to plead facts sufficient to show MERS's appointment of ETS as substitute trustee was invalid. Count One will therefore be dismissed without prejudice.

## 2.  Count Two Does Not State a Viable Claim as to Timing of Foreclosure

Plaintiff further argues that foreclosure on her home while her HAMP application was pending violated the applicable law provision of the Deed of Trust, because HAMP Supplemental Directive No. 09-01 prohibits foreclosure during the pendency of a HAMP loan modification application. This claim fails, however, because HAMP Supplemental Directive No. 09-01 does not qualify as applicable law with regard to the Deed of Trust.

First of all, courts have "repeatedly and resoundingly held" that Supplemental Directive No. 09-01 does not have such force of law that a violation would provide a cause of action under a contract's applicable law provision, because no private right of action by a borrower to enforce HAMP regulations exists. *Cagle v. CitiMortgage, Inc.*, 2015 WL 2063990, at *7 (E.D. Va. May 1, 2015) (citing *Condel v. Bank of Am., N.A.*, 2012 WL 2673167, at *6 (E.D. Va. July 5, 2012); *Johnson v. Bank of Am. N.A.*, 2012 WL 6052044, at *2 (E.D. Va. Dec. 5, 2012); *Correll v. Bank of Am., N.A.*, 2012 WL 348594, at *4 (E.D. Va. Feb. 2, 2012); *McInnis v. BAC Home Loan Servicing, LP*, 2012 WL 383590, at *3 (E.D. Va. Jan. 13, 2012); *Bourdelais v. J.P. Morgan Chase Bank, N.A.*, 2011 WL 1306311, at *3 (E.D. Va. Apr. 1, 2011) ("Bourdelais I ")); *see also Lubitz v. Wells Fargo Bank, N.A.*, 85 Va. Cir. 379, 380 (2012).

Secondly, even if Supplemental Directive No. 09-01 had the force of law, Virginia

state and federal courts agree that only law existing at the time of contract formation

qualifies as "applicable law." *See Gazale v. Gazale*, 219 Va. 775, 777 (1979) ("New

statutes are usually presumed to operate prospectively only, . . . and contractual rights and

duties are controlled by the law in effect at the time the contract was executed."); *Condel*

*v. Bank of Am., N.A.*, 2012 WL 2673167, at *6-8 (E.D. Va. July 5, 2012).  In *Condel*, this

Court addressed the question of whether Supplemental Directive No. 09-01, enacted in

April of 2009, applied to a deed of trust that was executed in 2007.

After a review of Virginia state and federal law, including the *Matthews* case

relied upon by Plaintiff here,[4] this Court held that "the Deed of Trust does not incorporate

laws enacted or issued [after the Deed's execution], and [plaintiff] therefore cannot rely

on [defendant's] purported violation of Supplemental Directive 09–01 as grounds for

breach of contract." *Condel* at *8.  "Contracts are generally understood to incorporate

only those laws which exist at the time of formation," and therefore an after-enacted

regulation could not have been incorporated through the 'all applicable law' clause in a

deed of trust because it was not in existence at the time that the contract was made. *See*

*Id.*  Other courts addressing this issue agree. *See Rehbein v. CitiMortgage, Inc.*, 937 F.

Supp. 2d 753, 764 (E.D. Va. 2013); *Lubitz v. Wells Fargo Bank, N.A.*, 85 Va. Cir. 379,

380 (2012); *see also Cagle v. CitiMortgage, Inc.*, 2015 WL 2063990, at *10, n. 6 (E.D.

Va. May 1, 2015); *Simon v. PNC Bank, N.A.*, 2015 WL 1802659 at *6 (E.D. Va. Apr. 16,

2015); Townsend v. Fannie Mae, 923 F. Supp. 2d 828, 841 (W.D. Va. 2013).

---

[4] *See* Pl.'s Mem. in Opp., 28–29.

This Court declines Plaintiff's invitation to chart a different course. Accordingly, Count Two will be dismissed without prejudice.

**B.    Count Three—Breach of Cure Notice Provisions in Note & Deed of Trust**

Both the Note and the Deed of Trust contained "cure notice" provisions in the event of Plaintiff's breach. Plaintiff alleges that Deutsche Bank breached these provisions by sending a deficient pre-acceleration cure notice. Under Virginia law, to state a plausible breach of contract claim Plaintiff must allege: (1) a legally enforceable obligation of a defendant to the plaintiff; (2) defendant's violation or breach of that obligation; and (3) resulting injury or harm to the plaintiff. *Filak v. George*, 267 Va. 612, 614 (2004). It is undisputed that Plaintiff was contractually entitled to notice prior to acceleration of the loan. (Compl., Ex. A at ¶ 6(C), Ex. B at ¶ 22.) At issue, then, is whether Plaintiff has sufficiently alleged that Deutsche Bank breached this obligation and that Plaintiff suffered legally cognizable harm.

**1. Breach**

Plaintiff alleges that "No holder of the note, no owner of the loan, no-one in the capacity as a creditor as to the note or as to the loan, or as to the deed of trust, ever sent to [Plaintiff] any proper 30-day cure notice to comply with the requirements of paragraph 6 (C) of the note or paragraph 22 of the deed of trust." (Compl. at ¶ 71.)

Paragraph 6(C) of the Note states:

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date

13

> must be at least 30 days after the date on which the notice is
> mailed to be or delivered by other means.

(Compl., Ex. A at ¶ 6(C).)

The Deed of Trust provides that:

> Lender shall give notice to Borrower prior to acceleration
> following Borrower's breach of any covenant or agreement in
> this Security Instrument . . . . The notice shall specify: (a) the
> default; (b) the action required to cure the default; (c) a date,
> not less than 30 days from the date the notice is given to
> Borrower, by which the default must be cured; and (d) that
> failure to cure the default on or before the date specified . . .
> may result in acceleration . . . . The notice shall further inform
> Borrower of the right to reinstate after acceleration and the
> right to bring a court action to assert the non-existence of a
> default or any other defense of Borrower to acceleration and
> sale.

(Compl., Ex. B at ¶ 22.)

Plaintiff argues that Defendant's Exhibit 2 to the Memorandum in Support of the

Motion to Dismiss, proffered as the cure notice sent to Plaintiff, does not comply with the

requirements listed above. [5] The plain language of the document appears to support

Plaintiff's argument. Exhibit 2 does not include a date by which any overdue amount

must be paid to prevent acceleration. (Def.'s Mem. in Supp., Ex. 2.) In fact, the April

20, 2010 letter appears to indicate that acceleration has already occurred, as it discusses

"the full amount due *to reinstate* [Plaintiff's] account at this time." (*Id.* at 1 (emphasis

added).) Given that both the Note and the Deed of Trust require any cure notice to

---

[5] This Court is permitted to consider attachments to Defendant's motion to dismiss if the attachments are "central to the plaintiff's claim" and their authenticity is not challenged by the plaintiff. *See Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396–97 (4th Cir. 2006) (*per curiam*); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). This purported cure notice is clearly central to Plaintiff's claim, and Plaintiff did not challenge its authenticity in her Memorandum in Opposition.

include a specific date, falling at least thirty days after the delivery of the notice of

default, Plaintiff states a plausible claim that the notice provided by Deutsche Bank was

insufficient under the terms of the Note and the Deed of Trust.[6]

## 2. Injury

Plaintiff alleges that she suffered, among other things, loss of equity in her home

and harm to her credit, resulting in economic loss. (Compl., ¶ 73.)  Plaintiff further

alleges that this loss was the result of Deutsche Bank's foreclosing on her home in breach

of the cure notice provisions of the Note and the Deed of Trust.  (*Id.*)  Plaintiff has

sufficiently pled an injury that resulted from Deutsche Bank's breach.  *See Harrison v.*

*U.S. Bank Nat'l Ass'n*, 2015 WL 3603929 at *2 (E.D. Va. June 15, 2015).

In light of the above, Plaintiff has pled the elements of a breach of contract claim

sufficiently to survive a Rule 12(b)(6) motion to dismiss.  Any further finding regarding

the adequacy of Defendant's cure notice must await a more fully developed record.

Therefore, Defendant's Motion to Dismiss with regard to Count Three will be denied.

---

[6] It should be emphasized that this opinion is based on the four corners of the Complaint and the
face of Defendant's Exhibit 2.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 3) will be granted in part and denied in part.[7] An appropriate Order will accompany this Memorandum Opinion.

/s/
_____
Henry E. Hudson
United States District Judge

Date: March 28, 2016
Richmond, Virginia

---

[7] In Plaintiff's Memorandum in Opposition to the Motion to Dismiss, she asks for leave to amend her complaint. Rule 15 of the Federal Rules of Civil Procedure provides that parties should "freely" be given leave to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Fourth Circuit has explained, "[a] motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (citing *HCMF Corp. v. Allen*, 238 F.3d 273, 276-77 (4th Cir. 2001)). In this case, any amendment would be futile as to Counts I and II. Therefore, this Court will not grant leave to amend.